UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMERICAN WELL CORP., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-12274-IT |
| | * | |
| TELADOC, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

June 13, 2016

TALWANI, D.J.

I.     Introduction

Plaintiff American Well Corporation ("American Well"), the owner of Patent No. 7,590,550 ("'550 patent"), alleges that Defendant Teladoc, Inc.'s ("Teladoc") telehealth[1] system infringes on at least four of the '550 patent's claims.  Am. Compl. [#41].  Before the court is Teladoc's Motion to Dismiss Plaintiff's Amended Complaint [#42] on the grounds that these four claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

American Well argues that underlying claim construction disputes preclude this court from addressing Teladoc's motion to dismiss at this stage.  American Well is correct that it may sometimes be "desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis [because] the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  Bancorp Servs., LLC v. Sun Life Assurance

---

[1] "Telehealth is the use of technology to deliver health care, health information at a distance." What is telehealth?, U.S. Dep't Health & Human Servs., http://www.hrsa.gov/healthit/toolbox/RuralHealthITtoolbox/Telehealth/whatistelehealth.html (last visited April 28, 2016).

Co. of Can., 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).  But addressing 35 U.S.C. § 101 at the outset may "conserve[] scarce judicial resources and spare[] litigants the staggering costs associated with discovery and protracted claim construction litigation."  OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1364 (Fed Cir. 2015) (Mayer, J., concurring).  In applying § 101 at the pleading stage, the court construes the patent claims in a manner most favorable to the non-moving party.  See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014), cert. denied, 136 S. Ct. 119 (2015).

Construing the patent claims in this manner, the court finds the four claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101.  Accordingly, Teladoc's motion is ALLOWED.

II.    Facts as Alleged in the Amended Complaint

a. Background

American Well owns an intellectual property portfolio directed at components in a telehealth system.  Am. Compl. ¶¶ 9-10.  At issue is American Well's Patent No. 7,590,550 ("'550 patent"), entitled "Connecting consumers with service providers."  Id. ¶¶ 11, 70.  This patent was meant to address the limitations of earlier telehealth systems.  Although earlier systems allowed patients to receive medical care without coming into an office to see a doctor face-to-face, they did not "allow patients to select from amongst a group of doctors who were available at the time to consult with them."  Id. ¶¶ 21, 24-25.  This deficiency left medical care providers who had unexpected openings or cancellations without the ability to display themselves to prospective patients as available and left patients without the ability to locate currently available doctors when their normal physicians were unavailable.  Id.

The patented technology monitors, records, and extends services based on the "present availability" of a medical care provider.  Id. ¶ 26.  The technology "constantly monitors the availability of a provider for an engagement and thus, consumers receive immediate attention to address their questions or concerns, since the brokerage will connect them to available service providers."  Id. ¶ 27 (quoting '550 Patent col. 4 ll. 45-49).  The technology activates a "communication channel" between "the patient and [an] available physician" when a patient requests an "on-demand, real-time consultation with a physician," id. (quoting '550 Patent at col. 2 ll. 62-67), through well-known communications protocols such as "Instant Messaging and Presence Service (IMPS), Session Initiation Protocol (SIP) for Instant Messaging and Presence Leveraging Extensions (SIMPLE), and the Extensible Messaging and Presence Protocol (XMPP)."  Id. ¶ 29 (quoting '550 Patent at col. 7 ll. 22-29).  Additionally, the technology allows patients searching for medical care providers to filter those providers based on qualifications, experience, and present availability, thus allowing patients to make an informed decision about which provider to choose.  Id. ¶ 34.

The '550 Patent was issued on September 15, 2009.  Id. ¶ 40.  In issuing the patent, the United States Patent and Trademark Office noted that there were other existing telehealth systems, but none of those systems contained the novel technological features of the '550 Patent. Id. ¶ 37.  Teladoc sought to obtain a license on American Well's patents, but American Well rejected Teladoc's request.  Id. ¶ 54.

### b.   The Claims at Issue

American Well asserts that Teladoc has infringed and continues to infringe without license on "at least claims 10, 11, 23, and 30 of the '550 patent."  Am. Compl. ¶ 72.  What is claimed by these paragraphs of the '550 Patent is:

**10.**   A computer-implemented method comprises:

accessing a data repository that stores information pertaining to medical service
   providers, including present availability of the medical service providers for
   participating in a consultation;

receiving in a computer, indications that members of a pool of medical service
   providers have become presently available;

receiving in the computer, a request from a consumer of services to consult with a
   medical service provider;

identifying in the computer, an available member of the pool; and

establishing a real-time communication channel between the consumer of services
   and the identified member of  the pool.

**11.**   The method of claim 10 wherein:

the request includes an identification of a time in the future; and

identifying the member of the pool and establishing the communication channel
   take place at the identified time.

. . . .

**23.**   A computer program product residing on a computer readable medium
for providing broker services to consumers and service providers, the computer
program product comprising instructions for causing a computer to:

   access a data repository that stores information pertaining to medical service
      providers, including present availability of the medical service providers
      for participating in a consultation; receive indications that members of a
      pool of medical service providers have become presently available;

   receive a request from a consumer of services to consult with a medical
      service provider;

   identify an available member of the pool; and

   establish a real-time communication channel between the consumer of
      services and the identified member of the pool.

. . . .

**30.**   An apparatus comprising:

a processor; and

a computer program product residing on a computer readable medium for
   providing broker services to consumers and service providers, the computer
   program product comprising instructions for causing the processor to:

access a data repository that stores information pertaining to medical service
   providers, including present availability of the medical service providers for
   participating in a consultation;

receive indications that members of a pool of medical service providers have
   become presently available;

receive a request from a consumer of services to consult with a medical service
   provider;

identify an available member of the pool; and
establish a real-time communication channel between the consumer of services
     and the identified member of the pool.

'550 Patent col. 27 ll. 25-44, col. 29 ll. 12-29, col. 30 ll. 34-51.

For purposes of this motion, the court construes the terms "presently available" and "present availability" to mean "instantly available" or "available right now" as suggested by American Well.  See Hearing Mot. Dismiss Am. Compl. Tr. 20:1-2 [#52] (asking the court to think of present availability as obtaining "instantaneous access" to a doctor).[2]

III.   Discussion

a.   *The Amended Complaint Asserts Infringement on Four Claims*

American Well argues that this court need not reach the question of patent-eligible subject matter because Teladoc has only challenged four of thirty claims of the '550 Patent and that it is Teladoc's burden to show that there are no valid claims in the patent or that the four claims are representative of the other twenty-six.  American Well's Mem. Opp'n Teladoc's Mot. Dismiss 10-11 [#44].  Teladoc disagrees, arguing that the Amended Complaint [#41] in no way puts in issue the remaining twenty-six claims of the '550 Patent.  Teladoc's Reply Pl.'s Opp'n Teladoc's Mot. Dismiss 1 [#48].

The Introduction to the Amended Complaint [#41] states that the '550 Patent is infringed by the Teladoc system.  Am. Compl. ¶ 11.  However, the specific factual allegations concerning "Teladoc's Infringing Telehealth Platform" reference Claim 10 only.  Id. ¶ 49.  Under the heading "Teladoc's Infringement," American Well asserts that *"[a]s set forth in Count I,* Teladoc has infringed and continues to infringe claims in the '550 patent," and, in Count I,

---

[2] American Well avers that the terms "data repository," "stores information," and "communication channel" must be construed before the court can rule on any dispositive motion. However, American Well has proffered no proposed construction for those terms.

American Well states only that Teladoc has infringed the '550 Patent, by products "that are covered by *at least* claims 10, 11, 23, and 30 of the '550 patent . . . ."  Id. ¶¶ 67, 72 (emphasis added).   In sum, the "statement of the claim showing the pleader is entitled to relief," see Fed. R. Civ. P. 8(a)(2), cannot be read to allege that Teladoc has infringed the '550 Patent other than Claims 10, 11, 23 and 30.

Nor does this case require a determination of whether pleading consistent with former Form 18 of the Federal Rules of Civil Procedure is sufficient to withstand a motion to dismiss.[3] As American Well notes, the Federal Circuit has held that, under Form 18, "a plaintiff need not even identify which claims it asserts are being infringed" to give proper notice in a complaint.  In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1335 (Fed. Cir. 2012).  But even if Form 18 did not require identification of *which claims* are being infringed, it did require that the plaintiff allege that the defendant *has infringed the patent*.  The Amended Complaint [#41] does not so allege except as to the four identified claims.

Teladoc notes further that the remaining twenty-six claims are entirely different from the four claims at issue here.  See Teladoc's Reply Pl.'s Opp'n Teladoc's Mot. Dismiss 1 [#48]. American Well argues in response that it is Teladoc that has the burden to show that all the claims are "adequately represented by the representative claim" in that they relate to the same abstract idea and fail to include any inventive concept.  American Well's Mem. Opp'n Teladoc's Mot. Dismiss 11 [#44] (citing Cronos Techs., LLC v. Expedia, Inc., No. 13-1538-LPS, 2015 WL

---

[3] Prior to December 1, 2015, Form 18 of the Federal Rules of Civil Procedure set forth a sample complaint for patent infringement, and the form required: an allegation of jurisdiction; a statement that the plaintiff owns the patent; a statement that the defendant has infringed the patent by making, selling, or using the device embodying the patent; a statement that the plaintiff has given the defendant notice of its infringement; and demand for injunction and damages. Rule 84 further provided that the "forms . . . suffice under [the Federal Rules of Civil Procedure]."  Form 18 and Rule 84 were abrogated effective December 1, 2015.

5234040, at *2-3 (D. Del. Sept. 8, 2015)).   This argument is correct as to the four claims challenged—that is, to the extent that Teladoc's challenge to Claims 11, 23 and 30 is based on its challenge to Claim 10, Teladoc needs to show that Claims 11, 23 and 30 are adequately represented by Claim 10.   But Teladoc does not have the burden to address claims where American Well has not alleged any infringement.   Cronos Techs., LLC offers no support to the contrary.

### b.   Claims 10, 11, 23 and 30 are Not Directed to Patent-Eligible Subject Matter

#### i.   Legal Background

As a threshold requirement for patent protection, the subject matter of a patent must be patentable under 35 U.S.C. § 101; otherwise, the patent is invalid.   Under § 101, any "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" is eligible for patent protection.   Congress contemplated that "patent laws would be given wide scope," Diamond v. Chakrabarty, 447 U.S. 303, 308 (1980), but three categories of patent-ineligible concepts remain unpatentable: laws of nature, physical phenomena, and abstract ideas, including mental processes.   In re Bilski, 545 F.3d 943, 952 (Fed. Cir. 2008) (en banc), aff'd sub nom Bilski v. Kappos, 561 U.S. 593 (2010).   Although "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," these three patent-ineligible exceptions prevent "monopolization" of the "basic tools of scientific and technological work" and the impeding of innovation.   Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012).

The Supreme Court specifically addressed the third exception to patent eligibility— abstract ideas—in Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014).   Though abstract concepts are typically patent-ineligible, "an invention is not rendered ineligible for

patent simply because it involves an abstract concept." <u>Alice</u>, 134 S. Ct. at 2354 (citing

<u>Diamond v. Diehr</u>, 450 U.S. 175, 187 (1981)).  Consequently, the court must "distinguish

between patents that claim the building blocks of human ingenuity and those that integrate the

building blocks into something more, therefore transforming them into a patent-eligible

invention."  <u>Id.</u> (quoting <u>Mayo</u>, 132 S. Ct. at 1303, 1294 (internal citation and quotation marks

omitted)).

To make this determination, the Supreme Court uses a two-step framework.  The court

first determines "whether the claims at issue are directed to" an abstract concept.  <u>Id.</u> at 2355

(citing <u>Mayo</u>, 132 S. Ct. at 1296-97).  If the claims are directed to an abstract idea, the court

second considers each claim both individually and "as an ordered combination" to determine

whether the elements "transform the nature of the claim" into a "patent-eligible application."  <u>Id.</u>

(quoting <u>Mayo</u>, 132 S. Ct. at 1297, 1298) (citations omitted).  In performing this second step, the

court searches for an "inventive concept" or evidence to show that the claim is "significantly

more" than a patent on an abstract concept.  <u>Id.</u> (quoting <u>Mayo</u>, 132 S. Ct. at 1294, 1297).

Merely introducing a computer into the claims does not satisfy the second step.  <u>Id.</u> at

2357 (distinguishing between simply implementing an abstract idea on a computer (patent

ineligible) and using a computer to improve an existing technological process that requires

additional steps (patent eligible)).  The Supreme Court ultimately found in <u>Alice</u> that "mere

recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-

eligible invention."  <u>Id.</u> at 2358; <u>see id.</u> at 2352, 2360 (finding patent ineligible a "computer-

implemented scheme for mitigating settlement risk" where the claims only required "generic

computer implementation" and thus "add[ed] nothing of substance to the underlying abstract

idea"); <u>see also id.</u> at 2360 (stating that generic computer terms in claim, such as "data storage

unit" and "communications controller" do not render the patent eligible); DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1256 (Fed. Cir. 2014) (quoting Alice, 134 S. Ct. at 2358) ("[A]fter Alice, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible. The bare fact that a computer exists in the physical rather than purely conceptual realm is 'beside the point'") (internal citation omitted)).

However, an abstract concept that "purport[s] to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field" is patent-eligible. Alice, 134 S. Ct. at 2359; see also Enfish, LLC v. Microsoft Corp., -- F.3d --, No. 2015-1244, 2016 WL 2756255, at *8 (Fed. Cir. May 12, 2016) (finding that software patent claims are not directed to abstract idea because they are not merely "added post-hoc to a fundamental economic practice," but rather "are directed to a specific implementation of a solution to a problem in the software arts"); DDR Holdings, 773 F.3d at 1257-58 (Fed. Cir. 2014) (declaring claims eligible because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); cf. Mortg. Grader, Inc. v. First ChoiceLoan Servs. Inc., 811 F.3d 1314, 1325 (Fed. Cir. 2016) (stating that claims failed to satisfy the second step of Alice because "[n]othing in the asserted claims purport[ed] to improve the functioning of the computer itself or effect an improvement in any other technology or technical field" or "solve a problem unique to the internet").  But, merely "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."  Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1367 (Fed. Cir. 2015) (citing Bancorp, 687 F.3d at 1278) (finding patent-ineligible "claims limited to dynamic presentation of data – that is, that the claimed invention in

'real time' customizes [a] web page based on the information it knows about the particular viewer.").

American Well argues that Teladoc has not demonstrated a risk that the '550 Patent will preempt future technologies which utilize the concept of a patient requesting to have a consultation with a doctor.  The preemption inquiry focuses on whether the patent "would risk disproportionately tying up the use of the underlying ideas" and "undergirds [section] 101 jurisprudence."  Alice, 134 S. Ct at 2354, 2358; Bilski, 561 U.S. at 611-12 ("Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."); DDR Holdings, 773 F.3d at 1259 (finding patent claims at issue eligible in part because they "do not attempt to preempt every application of the idea of increasing sales [and instead] recite a specific" method).  The risk of preemption is not dispositive of patent eligibility but "helps to inform the [Alice] two-step analysis," Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC, 635 F. App'x 914, 918 (Fed. Cir. 2015), and accordingly, is considered as part of that analysis.

*ii.  Alice Step 1: The claims at issue are directed to an abstract idea*

Under the Alice analysis, American Well's claims are directed to a patent-ineligible abstract idea: setting up consultations between patients and available healthcare providers. Claim 10 below is representative of the other claims at issue: Claim 11 is dependent on Claim 10, Claim 23 implements the steps of Claim 10 on a computer program, and Claim 30 implements the steps of Claim 10 on an apparatus.  Teladoc argues that the asserted claims cover a "fundamental economic practice long prevalent" in commerce, Bilski 561 U.S. at 611, the abstract idea of a patient requesting and having a consultation with an available medical service provider.  Specifically, Teladoc equates Claim 10 to (i) a receptionist maintaining in an

appointment book information about which doctors are currently available, (ii) a patient calling

that office, and (iii) the receptionist identifying an available doctor and either placing the patient

on a telephone call with that doctor or scheduling a later appointment.[4]

American Well argues the analogy put forward by Teladoc is flawed because it does not

account for the "presently available" limitation.  Namely, a receptionist in the pre-internet era

could not have continually tracked and *instantaneously* updated a list of doctors that became

presently available, for example, if those doctors' appointments had suddenly finished early or

cancelled.  American Well contends that because the concept of tracking the instant availability

of doctors is not found in the pre-internet era, it is not in the category of long-standing,

fundamental economic practices that generally constitute abstract ideas.

In Alice, the Supreme Court declined to "delimit the precise contours of the 'abstract

ideas' category in this case."  134 S. Ct. at 2357.  Justice Sotomayor encouraged the court to

"adhere to the view that any claim that merely describes a method of doing business does not

qualify . . . under § 101," Alice, 134 S. Ct. at 2360 (Sotomayor, J., concurring) (internal

quotation marks omitted) (quoting Bilski, 561 U.S. at 614 (Stevens, J., concurring)).  However,

the Court has not gone so far so to adopt a "categorical business-method exception."  Content

Extraction, 776 F.3d at 1347 (Fed. Cir. 2014).  In Alice, the Court found it sufficient that the idea

in the claims, intermediated settlement, was a long-standing, fundamental economic practice, but

did not elaborate any further.  134 S. Ct. at 2356-57; see also Bilski, 561 U.S. at 599 (ruling that

---

[4] American Well argues that Teladoc's "appointment book" analogy was considered by the U.S. Patent and Trademark Office and rejected before the patent was issued, noting differences between the American Well technology and the prior art.  However, the question "of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter."  Diehr, 450 U.S. at 190 (internal quotation marks omitted).  Even if American Well's technology is novel and contains technical features not present in the prior art, this alone does not save the claims at issue from constituting an abstract idea.

claims directed to method of hedging risk were directed to an abstract idea).  The Federal Circuit too has had little trouble invalidating patent claims directed to long-standing, fundamental economic practices.  <u>See, e.g.</u>, <u>buySAFE, Inc. v. Google, Inc.</u>, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (stating that idea in patent was abstract because the claims were "squarely about creating a contractual relationship . . . [a concept] beyond question of ancient lineage.").

However, the Federal Circuit has not limited what constitutes abstract ideas to long-standing economic practices.  The court has held that claims generally "involving methods of organizing human activity" are abstract.  <u>Intellectual Ventures</u>, 792 F.3d at 1367 (ruling that a method of tracking and storing information was directed to an abstract idea); <u>see also</u> <u>Content Extraction</u>, 776 F.3d at 1347 (noting that "claims directed to the mere formation and manipulation of economic relations may involve an abstract idea"); <u>cf.</u> <u>Mortg. Grader</u>, 811 F.3d at 1324 (finding the claims abstract because they merely recited the concept of anonymous loan shopping—"borrower applies for a loan, a third party calculates the borrower's credit grading, lenders provide loan pricing information to the third party . . . the borrower discloses its identity to a lender.").  The court has also used a broader definition of "abstract," stating that an abstract concept is an "idea, having no particular concrete or tangible form."  <u>Ultramercial, Inc. v. Hulu, LLC</u>, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding that the claims were directed to the abstract idea of "receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad").

Notably, an idea's novelty cannot by itself save that idea from being abstract.  In <u>Ultramercial</u>, the court rejected the argument that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas, not previously well known, and not routine activity."  772

F.3d at 714.  The court said that "the addition of merely novel or non-routine components to the claimed idea [does not turn] an abstraction into something concrete."  Id. at 715; see also Morsa v. Facebook, Inc., 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014), aff'd, 622 F. App'x 915 (Fed. Cir. 2015) ("Morsa fails to recognize that while a claim's implementation of a 'fundamental, long-standing, well-known concept' is highly relevant to the Court's abstractness inquiry, it is not dispositive.  The dispositive inquiry is whether the concept to which a claim is drawn has "no particular concrete or tangible form." (quoting Ultramercial, 772 F.3d at 715)).

Here, Claims 10, 11, 23, and 30 are abstract, even if the court accepts for purposes of this motion that there is no pre-internet analog for the tracking of the present availability of doctors, such that it is not a long-standing, fundamental economic practice.  The claims nevertheless embody the abstract idea of connecting a patient with an available doctor.  The claims involve a method of "organizing human activity," Intellectual Ventures, 792 F.3d at 1367, and they constitute an "idea, having no particular concrete or tangible form."  Ultramercial, 772 F.3d at 715.  The preemption concerns raised by American Well underscore this point.  Allowing American Well to patent the idea of using a computer to connect a patient with an available doctor would effectively grant a monopoly over an abstract idea.

American Well argues that its patent claims are equivalent to the claims found to be eligible in DDR Holdings, LLC v. Hotels.com L.P., 773 F.3d 1245 (Fed. Cir. 2014).  In DDR Holdings, the Federal Circuit found that the claims which described "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were not directed to an abstract concept.  Id. at 1248.  The court rejected the analogy that the claims were like a "store within a store," a kiosk for selling a third-party's merchandise in a larger store.  Id. at 1258.  The court instead found that the patent

concept—an internet user being transported to a different but similar-looking website using a hyperlink—in a real-world context would be more akin to a customer walking up to a kiosk in a store and being transported physically to a different venue (even if that venue looked like the original store).  Id.  Thus, there was no real-world analog.  The court stated that the claims, in relation to claims found abstract in prior cases, "stand apart because they do not merely recite the performance of some [known] business practice" and emphasized that the invention sought "to overcome a problem specifically arising in the realm of computer networks."  Id. at 1257 (noting that the claims addressed the problem of a host website losing visitors when they click on a hyperlink and are transported to a separate third-party site).

The claims here are different.  They do not purport to improve the functioning of computer or internet technology itself, nor do they address an internet-centric challenge.[5]  They only implement a novel idea using admittedly known computer technology, which by itself cannot save the claims from being abstract.  See Hayden W. Gregory, Following the Bilski Near Miss, Can Business Method Patents Survive Alice?, 7 No. 1 Landslide 2, 64 (2014) (The impact of Alice is "illustrated in the Court's favorable citation to the Solicitor General's brief arguing that improved organization of human activities by computer implementation does not add enough--the claim must purport to improve the functioning of the *computer itself*, or effect an improvement in another technology." (emphasis in the original)).

### iii.  *Alice Step 2: The claims at issue do not amount to an inventive concept*

Moving to Step 2 of the Alice analysis, the claims at issue do not contain an inventive concept.  Instead, they merely add generic and previously-known computer components to an

---

[5] American Well correctly notes that the claims may solve the problem of a doctor's receptionist—or, as here, virtual receptionist—not knowing exactly when doctors are presently available.  But this is a real world problem; not an internet-centric problem.

abstract idea.  The claims describe routine performance of a computer—such as accessing and

"stor[ing] information" on a "data repository," identifying medical service providers in a "pool,"

sending and receiving communications over a "computer," and using the Internet to do all of the

above, including setting up a "communication channel"—that do not transform an abstract idea

into patent-eligible subject matter.  See Alice, 134 S. Ct. at 2360 (noting that generic computer

terms in claim, such as "data storage unit" and "communications controller" do not render the

patent eligible); Ultramercial, 772 F.3d at 716; Intellectual Ventures, 792 F.3d at 1368 ("The

recited elements, e.g., a database, a user profile . . . and a communication medium, are all generic

computer elements.").[6]

American Well asserts that Claims 10, 11, 23, and 30 in the '550 Patent do more than

simply add computer components to an abstract idea.  Instead, the patent's provision of real-time

communication between patients and presently-available doctors solved a technological problem

inherent in prior telehealth technologies: the asynchronous communication between patients and

doctors.  Thus, American Well argues, its claims are similar to those found patent eligible in

DDR Holdings and are "necessarily rooted in computer technology in order to overcome a

problem specifically arising in the realm of computer networks."  DDR Holdings, 773 F.3d at

1257-58. [7]

---

[6] The patent specifications confirm that the computer elements in the claim are generic
components.  See '550 Patent col. 3 ll. 55-col. 4 ll. 14 (computer contains components
"commonly known in the art"); col. 6 ll. 31-58, col. 7 ll. 22-29 (tracking model transfers
information using "one or more well-known presence protocols"); col. 9 ll. 34-37, col. 11 ll. 45-
col. 13 ll. 13 (system establishes a real-time communication channel through well-known
communication channels).

[7] The court's analysis focuses on the representative claim, Claim 10.  But, the other three claims
add nothing further.  Claim 11 is dependent on 10, and Claims 23 and 30 are merely directed to a
computer program (23) and an apparatus with a processor (30).  The recasting of a "method" as a
"computer program" or an apparatus with a generic "processor" and a "computer program" adds
nothing to the eligibility analysis. See CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d

American Well's comparison to <u>DDR Holdings</u> misses the mark; the claims do not solve a problem rooted in internet technology.  In <u>DDR Holdings</u>, the court noted that the claims "specify how interactions with the Internet are manipulated to yield a desired result . . . [i]nstead of a computer network operating in its normal, expected manner . . . ."  773 F.3d at 1258.  Here, on the other hand, the claims do not specify a manipulation of interactions with the Internet.  Instead, they append what is admittedly well-known technology to an abstract idea.  <u>See</u> '550 Patent col. 6 ll. 31-58, col. 7 ll. 22-29 (tracking model transfers information using "one or more well-known presence protocols"); col. 9 ll. 34-37, col. 11 ll. 45-col. 13 ll. 13 (system establishes a real-time communication channel through well-known communication channels) (emphasis added); <u>Mortg. Grader</u>, 811 F.3d at 1325 (noting that "[n]othing in the asserted claims purport[ed] to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field" or "solve a problem unique to the internet" (quoting <u>Alice</u>, 134 S. Ct. at 2359)).[8]

---

1366, 1375 (Fed. Cir. 2011); <u>see also</u> <u>Alice</u>, 134 S. Ct. at 2360 (the "claims to a computer system and a computer-readable medium fail for substantially the same reasons.").  Claims 23 and 30 additionally describe "a computer program product residing on a computer readable medium for providing broker services to consumers and service providers."  '550 Patent col. 29 ll. 12-14, col. 30 ll. 36-38.  This provision of brokerage—or, in other words, intermediary—services adds nothing further as that concept is analogous to what the Supreme Court described and found patent-ineligible in <u>Alice</u>.  132 S. Ct. at 2356 (finding claims ineligible where they involved a "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk.").

[8] American Well relies on the specification to show how its "tracking module" is technologically inventive.  '550 Patent col. 7 ll. 22-29.  The court can consider the specification, see <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (a "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim . . . but in the context of the entire patent, including the specification"), but any limitations that the specification describes must be in the claim itself.  <u>Intellectual Ventures</u>, 792 F.3d at 1370 (rejecting argued limitation because the "claims [were] not so limited").  Here, the claims reference the storing of information on which doctors are presently available, but they do not mention any tracking module or any limitations related to that module.  <u>See Accenture Global</u>

Admittedly, the technology as spelled out in the claims at issue does, at least for purposes of this motion, allow patients to obtain healthcare more expeditiously than with prior telehealth systems.  This, however, does not transform the claims' abstract business practice into a sufficiently inventive concept, because claims describing methods that merely "automate or otherwise make more efficient" traditional methods or techniques described in prior art do not render those claims patent eligible.  OIP Techs., 788 F.3d at 1363; see also Bancorp Servs., 687 F.3d at 1278 (noting that improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept).

IV.    Conclusion

The court finds that Claims 10, 11, 23, and 30 of the '550 Patent are invalid as directed to patent-ineligible subject matter.  Teladoc's Motion to Dismiss Plaintiff's Amended Complaint [#42] is ALLOWED.  The Amended Complaint [#41] is hereby DISMISSED.

IT IS SO ORDERED.

June 13, 2016                                                      /s/ Indira Talwani
                                                                  United States District Judge

---

Servs., GmbH v. Guideware Software, Inc., 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("The important inquiry for a §101 analysis is to look to the *claim*") (emphasis added).